RECEIVED
IN LAKE CHARLES, LA
JUN 1 6 2009
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CR. NO. 05-20223-01 |
| | * | CIVIL NO. 09-580 |
| VERSUS | * | JUDGE MINALDI |
| | * | |
| MARCUS WAYNE HENDERSON | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Presently before the court is a Motion to Vacate, Set Aside, or Correct the Sentence (doc. 53) pursuant to 28 U.S.C. § 2255 filed by the defendant, Marcus Wayne Henderson ("Henderson"). The Government filed an Opposition (doc. 57) and Henderson filed a Reply (doc. 58).

## PROCEDURAL HISTORY

On October 12, 2005, Marcus Wayne Henderson was charged in a four count Indictment with carjacking in violation of 18 U.S.C. § 2119 (Count 1), using, carrying, possessing, and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2), possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 3), and forfeiture pursuant to 18 U.S.C. § 924(d)(1) (Count 4). (Doc. 2).

On August 11, 2006, Henderson pleaded guilty to Count 2 of the Indictment (Docs. 22-23).

On October 10, 2006, a Pre-Sentence Investigation Report (PSR) was issued. The defendant's criminal history score was assessed based upon a total of seven points for numerous prior felony and misdemeanor criminal convictions. Two points were added pursuant to § 4A1.1(d) because Henderson committed the instant offense while on probation for a prior offense. (PSR at ¶¶ 21-28). This total of nine criminal history points resulted in Criminal History Category IV. (PSR at ¶ 29). Neither the Government nor the defendant filed any objections to the PSR. (Addendum to PSR at

1

p.1).

On December 12, 2006, this court issued a minute entry giving notice that it would consider an upward departure at the time of sentencing because "the offense level assigned may not adequately reflect the seriousness of the offense or the seriousness of the defendant's criminal history." (Doc. 30).

On March 28, 2007, the district court issued a Memorandum Ruling setting forth its reasons in support of an above-guidelines sentence. (Doc. 40).

On April 26, 2007, the court sentenced Henderson to 120 months incarceration to be followed by five years supervised release. (Doc. 44).

On April 15, 2008, the United States Court of Appeals for Fifth Circuit ordered a limited remand to the district court for the sole purpose of clarifying whether the sentence resulted from an upward departure pursuant to §§ 4A1.3, 5K2.0, and 5K2.21 or whether it resulted from a non-Guidelines variance. (Doc. 50).

On April 29, 2008, this Court issued a memorandum ruling pursuant to the limited remand by the Fifth Circuit and indicated that the sentence was a non-Guidelines variance that was not based solely on the under represented history under § 4A1.3, but also, on § 3553(a) factors including the extensive criminal history, the need to promote respect for law, deterrence of future criminal conduct, and the need to protect the public. (Doc. 51).

On July 17, 2008, the United States Court of Appeals for the Fifth Circuit affirmed the defendant's sentence. (Doc. 53). The decision was issued as mandate on August 8, 2008 and was entered into the district court record on August 21, 2008. (Doc. 52).

On March 19, 2009, the defendant filed a motion to vacate, set aside or correct sentence

p.1).

On December 12, 2006, this court issued a minute entry giving notice that it would consider an upward departure at the time of sentencing because "the offense level assigned may not adequately reflect the seriousness of the offense or the seriousness of the defendant's criminal history." (Doc. 30).

On March 28, 2007, the district court issued a Memorandum Ruling setting forth its reasons in support of an above-guidelines sentence. (Doc. 40).

On April 26, 2007, the court sentenced Henderson to 120 months incarceration to be followed by five years supervised release. (Doc. 44).

On April 15, 2008, the United States Court of Appeals for Fifth Circuit ordered a limited remand to the district court for the sole purpose of clarifying whether the sentence resulted from an upward departure pursuant to §§ 4A1.3, 5K2.0, and 5K2.21 or whether it resulted from a non-Guidelines variance. (Doc. 50).

On April 29, 2008, this Court issued a memorandum ruling pursuant to the limited remand by the Fifth Circuit and indicated that the sentence was a non-Guidelines variance that was not based solely on the under represented history under § 4A1.3, but also, on § 3553(a) factors including the extensive criminal history, the need to promote respect for law, deterrence of future criminal conduct, and the need to protect the public. (Doc. 51).

On July 17, 2008, the United States Court of Appeals for the Fifth Circuit affirmed the defendant's sentence. (Doc. 53). The decision was issued as mandate on August 8, 2008 and was entered into the district court record on August 21, 2008. (Doc. 52).

On March 19, 2009, the defendant filed a motion to vacate, set aside or correct sentence

under 28 U.S.C. § 2255. (Doc. 53).

On March 19, 2009, the defendant filed an affidavit and motion seeking recusal. (Doc. 54). On April 22, 2009, this Court denied the motion for recusal. (Doc. 55).

## FACTS

Henderson's conviction arises out of a violent incident on October 27, 2003 in Lake Charles, Louisiana during which Henderson kidnaped Jill Foreman in an effort to obtain "embalming fluid" he believed she had stolen from him.[1] At approximately 8:09 p.m. that day, Lake Charles police officers were dispatched to a residence on 6th Avenue in reference to an alleged kidnaping. (PSR at ¶ 8). When they arrived, they were advised by various witnesses that Marcus Wayne Henderson, while armed with a pistol, had forcibly kidnaped Jill Foreman from the house and had threatened to shoot various other residents of the house as he did so. (PSR at ¶ 8, 9). The witnesses further advised police that Henderson and Foreman had left the house in Foreman's red Honda Accord vehicle. (PSR at ¶ 8).

Thereafter, officers spotted Foreman's Honda Accord and stopped it. (PSR at ¶ 10). Henderson was driving the car, and Foreman was in the passenger seat. (PSR at ¶ 10). After both were removed from the car, officers located a 9mm semiautomatic pistol on the passenger side floorboard. (PSR at ¶ 10).

When interviewed by the officers, Foreman stated that at the time of the kidnaping, she was a heavy drug user and had been staying at the house on 6th Avenue because that was where she

---

[1] As noted by the Government in the Opposition, these facts are derived from the factual statements contained in the PSR and from the stipulation filed in connection with the defendant's guilty plea. (PSR at ¶¶ 8-14; Rec. Doc. 23).

3

obtained her drugs. (PSR at ¶ 12). On the day of the incident, she had left the house with Marcus Henderson, and the two of them had gone to her residence. (PSR at ¶ 12). Although Foreman's recollection of events was unclear due to her drug use, she probably stole some embalming fluid from Henderson at that time. (PSR at ¶ 12).

At some point, Henderson brought her back to the 6th Avenue residence, and she went to sleep in one of the bedrooms. (PSR at ¶ 12). While she was sleeping, Henderson returned to that residence, woke her up, pointed a gun at her head and forced her to leave with him in her car. (PSR at ¶ 12). As they drove toward her residence on Deaton Street, Henderson told her that he wanted his money (presumably to cover the cost of the stolen fluid) and that no one was going to get away with stealing from him. (PSR at ¶ 12). Henderson further stated he would rape her, kill her, or do whatever it took to get the money. (PSR at ¶ 12).

While close to her residence, Henderson spotted the police cars, hid the pistol under the car seat, and instructed Foreman not to tell the police anything. (PSR at ¶ 12). During the subsequent stop, Foreman told police that Henderson drove a gray Chevrolet Caprice and that he had drugs in the car. (PSR at ¶ 10). Officers located the Caprice. (PSR at ¶ 10). A subsequent search of the car produced two marijuana cigarettes and four Xanax pills. (PSR at ¶ 10). Officers attempted to speak with Henderson, but it was apparent that he was under the influence of drugs and/or alcohol. (PSR at ¶ 10). He did tell the officers that he knew what he did was stupid, but that Foreman had taken $300 from him and he wanted it back. (PSR at ¶ 10).

After the traffic stop, Foreman was taken to the hospital by her mother and was later released. (PSR at ¶ 12). She did not immediately cooperate with the police in the investigation of her kidnaping because she was scared of what Henderson might do to her when he was released from

4

jail and also because she did not want to get other people living in the house on 6th Avenue in trouble. (PSR at ¶ 12).

The 9mm Bryco Arms semi-automatic pistol used by Henderson when he kidnaped Foreman was reported stolen by Elijah Webre on October 28, 2003, the day after the kidnaping. Webre had last seen it three days earlier and believed it was stolen from his vehicle while he was at a local nightclub. (PSR at ¶ 13).

Prior to this incident, Henderson had been convicted of two felony offenses, simple burglary and possession of stolen things. (PSR at ¶ 13).

Law and Analysis

The only issues cognizable under 28 U.S.C. § 2255 are jurisdictional and constitutional issues, and in rare circumstances non-constitutional and non-jurisdictional errors, not raised on appeal, which could result in a "complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1996); *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

Collateral review is fundamentally different from and may not replace a direct appeal. *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir.1991) *(en banc)*. Even if the issues are constitutional or jurisdictional, the defendant may be procedurally barred from raising them collaterally. A defendant may not raise an "issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir.1994) ( citing *Shaid*, 937 F.2d at 232); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir.1995).

Even if a defendant cannot establish "cause" and "prejudice," he may still be entitled to relief under § 2255 if there is a constitutional error which would result in a complete miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S. Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Bousley v. United States*, 523 U.S. 614, 620-2, 118 S. Ct. 1604, 1610-1611, 140 L.Ed.2d 828 (1998); *United States v. Ward*, 55 F.3d 412, 414 (5th Cir. 1995); *Shaid*, 937 F.2d at 232; *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Hicks*, 945 F.2d 107, 108 (5th Cir. 1991). Such a miscarriage of justice would result if the error caused the defendant to be convicted of a crime of which he is innocent. *Shaid*, 937 F.2d at 232; *United States v. Williams*, No. 05-30014-01, 2008 WL 5532099, *2 (W.D.La. 12/04/2008).

A criminal defendant who fails to raise an available issue on direct appeal is procedurally barred from raising the claim in a § 2255 motion, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). A showing of a fundamental miscarriage of justice can be shown if a prisoner can establish actual innocence. *Id.* at 1465 n.5. To do so, the prisoner must demonstrate that, "in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him." *Jones v. United States*, 153 F.3d 1305, 1308 (11th Cir. 1998) (internal quotations and citations omitted). Henderson has not established cause and prejudice, nor a miscarriage of justice. Neither has Henderson asserted actual innocence.

Henderson is procedurally barred from raising his claims regarding the denial of the motion to recuse as this is a claim that he could have raised on direct appeal, but did not raise. *United States v. Willis*, 273 F.3d 592 ( 5th Cir. 2001).

Henderson argues that the court's upward departure to a sentence of 120 months violates

due process and that the court abused its discretion in considering the criminal history when departing. The defendant has previously appealed the sentence and the Fifth Circuit has affirmed that sentence. Claims that have been raised and considered on direct appeal cannot be considered in a §2255 motion and may be dismissed without reconsidering the merits. *United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994).

The defendant's claims are either procedurally barred or have been addressed on appeal. Accordingly, for the reasons stated herein, the defendant's §2255 motion will be denied.

Lake Charles, Louisiana, this ____ day of June, 2009.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE